KOCH OIL COMPANY, A DIVISION OF KOCH INDUSTRIES, INC., Appellant,

v.

ANDERSON PRODUCING, INC., Appellee.

No. 09–93–144 CV.

Court of Appeals of Texas, Beaumont.

Sept. 29, 1994.

Terrell L. Pace, Livingston, D'Lyn Davison, Sherrill & Pace, Wichita Falls, Thomas A. Loftus, III, Koch Industries, Tye G. Darland, Koch Industries, Wichita, for appellant.

John Zukowski, Campbell, Zukowski & Bresenhan, Susan C. Stevenson, Hays, McConn, Price & Pickering, Houston, B.J. Mann, Ft. Worth, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Appellant Koch Oil Company, a division of Koch Industries, Inc., makes its appeal seeking reversal of an adverse judgment rendered in the Second 9th Judicial District Court of Polk County, Texas. Anderson Producing, Inc., is before this Court as appellee. In this opinion we shall refer to Koch Oil Company as appellant or Koch while Anderson Producing, Inc., shall be referred to as appellee or Anderson.

Procedurally and factually, on August 15, 1990, Anderson obtained a judgment in the amount of $120,891.43 against John R. Watson (Watson), H.L. Wagner Oil & Gas Reporting, Inc. (Wagner), and John R. Watson, Trustee of H.L. Wagner Oil & Gas, Inc. (Watson–Trustee). Subsequent to obtaining this judgment, Anderson brought the underlying action as a garnishment proceeding against Koch for funds which Koch owed Watson, Wagner and Watson–Trustee, referred to collectively as "Judgment Defendants." When Koch was served with the Writ of Garnishment, Koch held $18,728.66 attributable to oil produced from leases which Wagner had previously operated. It was determined by Koch that only $3,967.42 of this sum was owed to either the Judgment Defendants or parties who held their interest by, through or under any of the Judgment Defendants. Koch paid the $3,967.42 into the court's registry, distributing the balance to parties entitled to same. Thereafter, Anderson amended its garnishment action making claims against Koch in the judgment and Transferee Defendants for fraudulent transfer and conspiracy to defraud Anderson. These Transferee Defendants were parties who had acquired their interests from one or more of the Judgment Defendants. Prior to trial, the Judgment Defendants filed for bankruptcy and three of the Transferee Defendants were dismissed from the case. The Judgment Defendants were severed and the case went forward against Koch and the remaining Transferee Defendants.

This case was tried to a jury in December 1992, said jury finding that Koch was liable along with other defendants for fraud in the amount of $164,360.35; for conspiracy to commit fraud in the amount of $200,000; individually for wrongfully paying garnished funds in the amount of $100,000; individually for exemplary damages in the amount of $100,000 and for attorneys' fees of $1,000,000 through trial, $2,000,000 if appealed to the court of appeals; $3,000,000 if Koch seeks a Writ of Error to the Supreme Court; and $4,000,000 if the Supreme Court should grant the Writ.

The trial court entered judgment for compensatory damages in the amount of $152,-722.84 against Koch and other defendants, jointly and severally; exemplary damages of $100,000 against Koch and separately against each of the other defendants; assessed against Koch and the other defendants, jointly and severally, attorneys' fees of $119,-198.84; prejudgment interest of $2,119.74, post-judgment interest, and costs. Koch is the only appellant in this appeal.

Appellant brings to this Court seven points of error; we choose to address appellant's point of error two at the outset.

## POINT OF ERROR TWO

The trial court erred in overruling Koch's Motion to Disqualify Counsel or Strike Witnesses, Motion to Compel Discovery and/or Motion to Disqualify Counsel and/or Strike Testimony, and Motion for New Trial because Anderson's attorney performed the dual roles of advocate and witness during trial. The trial court further erred in permitting K. Ray Campbell to testify to matters as to which there was no showing of personal knowledge.

■ Appellant contends that the testimony of Mr. K. Ray Campbell, attorney for Anderson, appeared and testified both as a fact witness and an expert witness in violation of Disciplinary Rule 3.08. TEX. DISCIPLINARY R.PROF. CONDUCT 3.08 (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1994) (STATE BAR RULES art. X, § 9). This Court agrees with appellant's contention and holds that Mr.

Campbell's appearance and testimony as a witness in this case violates both the letter and the spirit of Disciplinary Rule 3.08.

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct provides:

### LAWYER AS WITNESS

(a) A lawyer shall not accept or continue employment in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.

(c) Without the client's informed consent, a lawyer may not act as advocate in an adjudicatory proceeding in which another lawyer in the lawyer's firm is prohibited by paragraphs (a) or (b) from serving as advocate. If the lawyer to be called as a witness could not also serve as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in the presentation of the matter.

Approximately three weeks prior to trial, appellant received notice via appellee's answers to interrogatories propounded by Royalty Owners Service, Inc., CSJ, Inc., and

Combined Systems, Inc., that K. Ray Campbell, attorney for appellee, would testify as an expert witness at trial of this cause. Appellant Koch, then undertook to have Mr. Campbell disqualified by way of Motion to Disqualify Counsel or Strike Witness. This motion properly set out that Mr. Campbell's testimony would only be proper pursuant to Exception No. 3 relating to the nature and value of legal services rendered. The trial court overruled appellant's motion to disqualify attorney K. Ray Campbell.

 Texas Disciplinary Rules of Professional Conduct have the same force and legal effect upon matters to which they relate as do the Texas Rules of Civil Procedure upon matters to which procedural rules relate. *Warrilow v. Norrell*, 791 S.W.2d 515 (Tex. App.—Corpus Christi 1989, writ denied); citing *Cochran v. Cochran*, 333 S.W.2d 635, 640 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.). Texas Disciplinary Rules of Professional Conduct are mandatory in character because they establish the minimum level of conduct below which no lawyer can fall. *Warrilow*, 791 S.W.2d at 519 citing *United Pacific Ins. Co. v. Zardenetta*, 661 S.W.2d 244, 249 (Tex.App.—San Antonio 1983) (orig. proceeding). This Court must determine whether the trial court abused its discretion by refusing to order the disqualification of attorney K. Ray Campbell once it was brought to the trial court's attention that Mr. Campbell would testify as a fact witness and an expert witness.

From the inception of litigation preceding this appeal, K. Ray Campbell signed as attorney of record on the following pleadings:

(1) Petition for Temporary Restraining Order, Injunction and Declaratory Judgment, filed May 16, 1990—signed by K. Ray Campbell—listing John M. Zukowski and K. Ray Campbell as attorneys for Plaintiff Anderson Producing, Inc.

(2) Plaintiff's Application for Writ of Garnishment After Judgment, signed K. Ray Campbell—listing K. Ray Campbell and John M. Zukowski—Attorneys for Plaintiff Anderson Producing, Inc.—filed November 2, 1990;

(3) Controverting Affidavit of Plaintiff, Anderson Producing, Inc., filed April 11, 1991—signed by K. Ray Campbell—listing K. Ray Campbell and John M. Zukowski as attorneys for Plaintiff, Anderson Producing, Inc.;

(4) Plaintiff's Second Supplemental Pleadings to Application for Writ of Garnishment After Judgment filed January 16, 1992 signed by K. Ray Campbell—listing K. Ray Campbell and John M. Zukowski as attorneys for Plaintiff, Anderson Producing, Inc.;

(5) Motion to Sever filed August 24, 1992 signed by K. Ray Campbell listing John M. Zukowski and K. Ray Campbell as attorneys for Plaintiff, Anderson Producing, Inc.

Suffice it to say that attorney K. Ray Campbell was intently involved as attorney of record for Anderson Producing from the inception of all legal matters relating hereto, up until appellant Koch filed its Motion to Disqualify K. Ray Campbell as a witness in this cause. In Anderson's Response to Motion to Disqualify counsel or strike witness, Anderson contends that Koch's Motion to Disqualify counsel amounts to nothing more than a motion for continuance, further stating that Koch's Motion to Disqualify is incompetent. Anderson faults Koch for failing to obtain a correct understanding of K. Ray Campbell's role at the trial of this matter. Anderson contends that Campbell is not a trial lawyer and that it had always been Anderson's intention to have John M. Zukowski listed as advocate during the trial of this matter. In listing K. Ray Campbell as an expert witness only three weeks prior to trial, Koch in response, listed one of its attorneys as a potential witness. Anderson attempts to excuse Campbell's conduct by stating that, "Anderson has no objection to Koch's counsel appearing at trial as both an advocate and as a witness."

 We submit that Rule 3.08 is not a rule subject to lawyer compromise, and that Mr. Campbell and the law firm of Campbell, Zukowski, Bresenhan & Woods, L.L.P., have failed to grasp the import of this Disciplinary Rule. Mr. Campbell attempts to excuse his conduct by suggesting compliance with Rule

3.08(b) by pleading client consent after full disclosure. Our question is: What evidence was presented to the trial court to bring Mr. Campbell's testimony under the exception provided by Rule 3.08(a)(5)? This Court cannot accept that Mr. Campbell "promptly notified" opposing counsel that Mr. Campbell expected to testify in the trial of this matter and, most importantly, counsel for Anderson has never explained why Mr. Campbell's disqualification would work a substantial hardship on his client, Anderson.

Mr. Campbell attempts to justify his conduct by relying upon COMMENT 8 to Rule 3.08. This comment provides the following:

This rule does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal. To minimize the possibility of unfair prejudice to an opposing party, however, the Rule prohibits any testifying lawyer who could not serve as an advocate from taking an active role before the tribunal in the presentation of the matter. See paragraph (c). Even in those situations, however, another lawyer in the testifying lawyer's firm may act as an advocate, provided the client's informed consent is obtained.

We do not believe the import of Comment 8 to be that "catch-all" exception for lawyers to testify as to matters excluded by Rule 3.08. We do not believe that the intent of Comment 8 is to allow an attorney to consistently act as counsel for his/her client, then suddenly prior to trial reveal himself/herself as an expert witness in the matter. We view Comment 8 as subservient to those purposes set forth in Comment 4 to Rule 3.08 which provides:

In all other circumstances, the principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact. Normally those dual roles are unlikely to create exceptional difficulties when the lawyer's testimony is limited to the areas set out in sub-paragraphs (a)(1)–(4) of this Rule. If, however, the lawyer's testimony concerns a controversial or contested matter, combining the roles of advocate and

witness can unfairly prejudice the opposing party. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

■ A party is prejudiced when opposing counsel acts as both advocate and witness, and this conduct becomes intolerable when the attorney-witness fails to show that he has attempted to contact others who might act as an expert witness and found them lacking in knowledge of the relevant area. *Warrilow*, 791 S.W.2d at 523.

In *Warrilow*, the Corpus Christi Court placed emphasis on the fact that the testimony of the attorney who testified at trial comprised approximately one-third of all testimony adduced in the presentation of the plaintiff's case. In our case, Mr. Campbell's testimony comprised approximately 403 pages of the total Statement of Facts which is approximately 578 pages in length. A review of the record reveals that the only testimony provided by Mr. Campbell which met an exception to Rule 3.08, was testimony relating to the nature and value of legal services rendered in the case.

An attorney's decision to testify regarding substantive matters, especially expert testimony, should not be viewed solely from the prospective of client interest. There exist plateaus of equal consideration which an attorney cannot ignore, i.e., the preservation and promotion of public trust in the legal profession and the legal process, and the concept of fairness to opposing interest. We believe the following quote from *Warrilow* to be appropriate here:

The rule of disqualification involves a balancing of the likelihood of public suspicion against the interest in retaining counsel of one's choice. *Cossette v. County Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir.1981). When the client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility clash, "[T]he preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is

paramount ..." and "[The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of the judicial process." *Zardenetta,* 661 S.W.2d at 248, *quoting, Hull v. Celanese Corp.,* 513 F.2d 568, 572 (2nd Cir.1975). There exists a broader concern *for public confidence in the administration of justice*—"justice must satisfy the appearance of justice." *Jones v. City of Chicago,* 610 F.Supp. 350 at 357 n. 3 (N.D.Ill. 1984).

. . . .

"The practice of attorneys furnishing from their own lips and on their own oaths the controlling testimony for their client is one not to be condoned by judicial silence * * * nothing short of actual corruption can more surely discredit the profession." *Ferraro v. Taylor,* 197 Minn. 5, 265 N.W. 829, 833 (1936).

*Warrilow,* 791 S.W.2d at 523.

We find that the trial court abused its discretion by failing to disqualify attorney Campbell as mandated by Rule 3.08, Texas Disciplinary Rules of Professional Conduct. *Mauze v. Curry,* 861 S.W.2d 869 (Tex.1993).

To warrant reversal and remand, appellant Koch must show that the violation of Rule 3.08 by Anderson was error and amounted to such a denial of appellant's rights as was reasonably calculated to cause and probably did cause an improper judgment to be rendered. TEX.R.APP.P. 81(b)(1). In this regard, the record reveals that Mr. Campbell's testimony touched upon every question presented to the jury for their determination. It is apparent to this Court that the jury placed great weight upon Mr. Campbell's testimony. Upon hearing the testimony in this cause, most of which was furnished through the expert testimony of Mr. Campbell, the jury rendered a verdict in the approximate and potential sum of $9,500,-000.

It takes little effort to conclude that Mr. Campbell's testimony was reasonably calculated to cause the rendition of an improper verdict. Mr. Campbell testified that Koch showed Watson "a way to beat the system,"

offering no explanation as to what the "system" was or the "way" Koch "showed" him how to "beat" same. Apparently, this conclusory testimony, unsupported in fact, was even unknown to Mr. Campbell's client, Mr. Anderson. Mr. Anderson, a party and witness having personal knowledge testified:

Q. Okay. Thank you sir. And you don't know of any meetings or conversations or whether there was any plots or schemes to conspire against you by Koch Oil, do you sir?

A. I don't know of any.

Q. Thank you sir.

MR. PACE: That's all I have.

MR. MANN: I have no other questions, Your Honor.

MR. ZUKOWSKI: Nothing further.

We offer yet one other consideration where review of Comment 8 to Rule 3.08 is, as here, used defensively. Comment 8 speaks of minimizing "the possibility of unfair prejudice to an opposing party...." Query: What could be more prejudicial to an opposing party than the substantive testimony of a lawyer, as an expert witness, having full and detailed knowledge of all related matters, all discovery, all potential testimony, having been responsible or partially responsible for the "creation of the case?" We submit that seldom, if ever, does a non-lawyer witness, fact or expert, possess or have accessible, such full and complete knowledge of a case. In this scenario, even Rule 267 TEX. R.CIV.P. (placing witness under the rule) provides no meaningful nor intended protection to the party opponent. Appellant's point of error two is sustained.

In sustaining point of error two, a remand is necessary unless we can render judgment based upon appellant's point of error one complaining of the factual and legal sufficiency of the evidence to support the conspiracy and fraud issues. *See Warrilow,* 791 S.W.2d at 524. In reviewing appellant's attack on the legal sufficiency of evidence to support an adverse finding on an issue on which it did not have the burden of proof, appellant must demonstrate that there is no evidence to support said adverse finding. TEX.R.APP.P. 74(d), *Raw Hide Oil & Gas,*

*Inc. v. Maxus Exploration, Inc.,* 766 S.W.2d 264 (Tex.App.—Amarillo 1988, writ denied). In examining "no evidence" points, we will consider only the evidence and inferences that tend to support the finding, and we will disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942 (Tex.1992). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Likewise, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14 (Tex. 1987). If there is any evidence of probative value which supports the finding then the point of error fails. *Holley v. Watts,* 629 S.W.2d 694 (Tex.1982).

When reviewing a "factual" sufficiency point of error of an adverse finding on an issue on which appellant did not have the burden of proof, the reviewing court should examine all of the evidence and set aside the finding only if it goes against the overwhelming weight and preponderance of the evidence so as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175 (Tex.1986). Moreover, under both standards of review, the evidence examined includes improperly admitted evidence which, in the instant case, includes the testimony of appellee's witness, K. Ray Campbell. *Mary Lee Foundation v. Tex. Emp. Com'n,* 817 S.W.2d 725, 729 (Tex. App.—Texarkana 1991, writ denied); *Tarkington v. Beneficial Finance Co. of Port Arthur,* 516 S.W.2d 722, 723 (Tex.Civ.App.— Beaumont 1974, writ ref'd n.r.e.).

The testimony of Campbell revealed that approximately eleven days following the August 15, 1990 judgment in appellee's favor against John R. Watson and Wagner Oil & Gas, the royalty interests of the Watson and Wagner Oil & Gas leases at issue were supposedly assigned to an entity named, "Royalty Owners Service, Inc." Several exhibits introduced into evidence by appellee purport to be instruments memorializing said assignments. These exhibits indicate that John R. Watson executed said instruments on behalf of both Wagner Oil & Gas *and* Royalty Owners Services, Inc. In essence, all of these assignments raise questions of genuineness. Other exhibits introduced into evidence revealed that well after the assignments took place, appellant continued making crude oil purchases from and payments to Wagner Oil & Gas Reporting, Inc. From all of this it can at least be inferred that appellant was not all that interested in ensuring that the proper royalty owners be promptly paid as appellant had insisted was their reason for initially dividing the $18,728.66, with $3,967.42 paid into the court for appellee, and $14,761.24 paid to some thirty other royalty interest owners. Appellant's unilateral division and distribution of the $18,728.66 took place after being served with the Writ of Garnishment, *and* after being informed by appellee that John R. Watson, and his son, Charles S. Watson, were engaging in the above-mentioned assignments.

The jury was provided the following instructions:

Each person who participates in any fraudulent transaction is responsible for any acts of any others done in furtherance of the fraudulent scheme.

Each person who participates in any fraudulent transaction is liable for any fraud, irrespective of whether that person shared in any profits, for the focus of the action is any injury to the plaintiff and not any benefit to the defendant.

A person has knowledge of any fraud if that person has actual awareness of any facts constituting a fraud or has knowledge of facts that would cause a reasonable prudent person to inquire into such facts and, as a result, would lead to the discovery of the fraud.

A person may become liable by mere silent acquiescence for fraudulent misrepresentations of a third party.

We find that, under the applicable standards of review, the evidence is legally and factually sufficient to sustain the verdict. We are unable to render judgment in favor of appellant. However, in view of our sustaining of point of error two, the cause is re-

manded to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.